UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BECHTEL DO BRASIL CONSTRUÇÕES LTDA., BECHTEL CANADA CO., and BECHTEL INTERNATIONAL, INC., <br><br> Petitioners, <br><br> v. <br><br> UEG ARAUCÁRIA LTDA., <br><br> Respondent. | Civil Action No. 1:09-cv-06417 |

**ANSWER TO PETITION FOR PERMANENT STAY OF ARBITRATION
AND COUNTER-APPLICATION TO COMPEL ARBITRATION**

Respondent UEG Araucária Ltda. ("UEGA"), in accordance with F.R.C.P. 81(a)(6)(B) and 9 U.S.C. § 206, hereby answers the Petition for Permanent Stay of Arbitration ("Petition") of Bechtel do Brasil Construções Ltda., Bechtel Canada Co. and Bechtel International Inc. (collectively "Bechtel") and counter-applies for an Order compelling Bechtel to arbitrate all disputes with UEGA in accordance with the parties' arbitration agreement.  In support of its counter-application, and in opposition to Bechtel's Petition, UEGA relies upon its accompanying memorandum of law and upon the declarations of Alvaro Fogaca, Gustavo Adolfo Almedia de Almedia and Jeffrey Follett filed herewith.  UEGA also relies in part on the Affidavit of Arshad Nawaz and its accompanying Exhibits submitted by Bechtel in support of its Petition.[1]  As set forth in those materials, this dispute arises out of a large-scale, international power project in Brazil.  The parties agreed that "any dispute" relating to that project would be resolved through

---

[1] To avoid exhibit duplication, and for the Court's convenience, UEGA is filing the Nawaz Affidavit and exhibits as searchable .pdf files, and will cite to the Nawaz Affidavit herein.  While UEGA does not contest the authenticity of the exhibits to the Nawaz Affidavit, it does contest many of Mr. Nawaz's factual averments as set forth herein and in UEGA's Answer to Petition for Permanent Stay of Arbitration.

arbitration. Bechtel's attempt to avoid arbitration by having this Court resolve statutes of limitations issues instead of leaving those issues to the arbitrators is contrary to the parties' agreement and to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, which governs Bechtel's Petition and UEGA's counter-application.

## ANSWER TO PETITION

UEGA, in accordance with F.R.C.P. 81(a)(6)(B) and 9 U.S.C. § 206, answers the Petition of Bechtel as follows:

## FIRST DEFENSE

As to the particular averments of the Petition:

1.  The allegations in paragraph 1 contain characterizations or legal conclusions to which no response is required. To the extent a response is required, UEGA admits that it filed a Request for Arbitration against Bechtel on September 29, 2008 before the International Court of Arbitration of the International Chamber of Commerce ("ICC"). Except as expressly admitted in the foregoing sentence, UEGA denies the remaining allegations in paragraph 1.

## Parties

2.  UEGA admits the allegations in paragraph 2.

3.  UEGA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.

4.  UEGA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.

5.  UEGA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5.

**Jurisdiction**

6. The allegations in paragraph 6 contain characterizations or legal conclusions to which no response is required. To the extent a response is required, UEGA admits that it agreed "not to assert a defense in any proceeding that it is not subject to the laws of the state of New York." *See* Umbrella Agreement, Affidavit of Arshad Nawaz ("Nawaz Aff."), Ex. 6, § 26.1. Except as expressly admitted in the foregoing sentence, UEGA denies the remaining allegations in paragraph 6.

**Venue**

7. The allegations in paragraph 7 contain characterizations or legal conclusions to which no response is required. To the extent a response is required, UEGA admits that the ICC arbitration is pending in New York. Except as expressly admitted in the foregoing sentence, UEGA denies the remaining allegations in paragraph 7.

**Factual Background**

8. UEGA admits the allegations in the first sentence of paragraph 8. UEGA denies the allegations in the second sentence of paragraph 8. Counter-Application to Compel Arbitration ("Counter-Application"), *infra* ¶ 8 (setting forth the full scope of the Site Construction Contract, Services Contract, Equipment Supply Contract (collectively, the "Contracts") and Umbrella Agreement executed by UEGA and Bechtel). UEGA admits the allegations in the third sentence of paragraph 8. UEGA denies the allegations in the fourth sentence of paragraph 8. Counter-Application, *infra* ¶ 8. UEGA admits the allegations contained in the footnote that follows the fourth sentence of paragraph 8.

9. UEGA admits the allegations contained in paragraph 9.

10. UEGA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11. UEGA admits the allegations in the first and second sentences of paragraph 11. UEGA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of paragraph 11. UEGA admits that Bechtel forwarded Alstom's repair procedures and some, but not all, of the results from the tests referenced therein. Counter-Application, *infra* ¶ 13. Except as expressly admitted in the foregoing sentence, UEGA denies the remaining allegations in the fifth sentence of paragraph 11. *See* Counter-Application, *infra* ¶ 13(describing test results Bechtel and Alstom did not provide to UEGA).

12. UEGA admits the allegations in the first sentence of paragraph 12. UEGA admits that the achievement of Mechanical Completion indicated that physical construction of the plant had been completed and that the plant was read for performance testing. Except as expressly admitted in the foregoing sentence, UEGA denies the remaining allegations in the second sentence of paragraph 12. UEGA admits the allegations in the third sentence of paragraph 12. UEGA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth, fifth and sixth sentences of paragraph 12.

13. UEGA admits the allegations in the first two sentences of paragraph 13. UEGA denies the allegations in the third sentence of paragraph 13. Declaration of Alvaro Fogaca ("Fogaca Decl.") ¶¶ 6-12 (describing testing and commissioning activities that must be completed before Project was fully operation).

14. UEGA admits the allegations in the first three sentences of paragraph 14. UEGA admits that September 27, 2002 was the Risk Transfer Date for the Project under the Contracts and that Bechtel was responsible for making good any defects during the two-year Defects Liability Period. Except as expressly admitted in the foregoing sentence, UEGA denies the

remaining allegations in the fourth sentence of paragraph 14. *See* Contracts, Arts. 29.1-2 (identifying breach of contract and Gross Misconduct claims against Bechtel as continuing remedies for damage to the works).

15. UEGA admits that the plant was recommissioned and that commercial operations began in December 2006. Counter-Application, *infra* ¶ 14. UEGA further admits that on January 13, 2008, the plant's steam-turbine generator failed. *Id.* Except as expressly admitted in the foregoing two sentences, UEGA denies the remaining allegations in paragraph 15.

16. UEGA admits the allegations in the first sentence of paragraph 16. UEGA denies the remaining allegations in paragraph 16, which merely characterize UEGA's Request for Arbitration. UEGA's Request for Arbitration speaks for itself. Request for Arbitration, Nawaz Aff., Ex. 1.

17. UEGA admits the allegations contained in paragraph 17.

## SECOND DEFENSE

Bechtel's Petition is time-barred under CPLR § 7502, *et seq.*

## THIRD DEFENSE

Bechtel's Petition should be denied under the Contracts and under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

## FOURTH DEFENSE

Bechtel's Petition is barred is by the doctrines of waiver, estoppel and/or unclean hands.

## FIFTH DEFENSE

UEGA's responses to each paragraph of the Petition and its assertion of various other defenses are made without waiving, but expressly reserving, all rights that UEGA may have to seek relief by one or more appropriate motions directed to the allegations of the Petition.

## **COUNTER-APPLICATION TO COMPEL ARBITRATION**

UEGA hereby counter-applies against Bechtel to compel arbitration of UEGA's claims now pending before the International Chamber of Commerce.

### **Parties**

1.      Counter-Applicant UEGA is a *sociedade limitada* incorporated under the laws of Brazil with its address at 341 Visconde do Rio Branco Street, 9th Floor, Curitiba, Paraná, Brazil, 90420-210.

2.      On information and belief, counter-application defendant Bechtel do Brasil Construções Ltda. is a *sociedade limitada* incorporated in Brazil with its address at AV. Dr. Churcri Zaiden, no. 920, 5th-6th Floor, CEP 04583-904, São Paulo, Brazil.

3.      On information and belief, counter-application defendant Bechtel Canada Co. is a corporation organized under the laws of the province of Nova Scotia, Canada with its address at 12 Concorde Place, Suite 200, North York, Ontario, Canada, M3C 3TI.

4.      On information and belief, counter-application defendant Bechtel International Inc. is a corporation organized under the laws of the state of Nevada with its address at 50 Beale Street, San Francisco, California, 94105.

### **Jurisdiction**

5.      This Court has personal jurisdiction over Bechtel for purposes of compelling arbitration because Bechtel consented to such jurisdiction by agreeing to arbitrate disputes with UEGA in New York.  *See* Umbrella Agreement, Nawaz Aff., Ex. 6, § 26.1 ("each party hereto agrees not to assert a defense in any proceeding that it is not subject to the laws of the state of New York").  New York courts have personal jurisdiction over parties that agree to arbitrate disputes in New York.  *See Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1139 (S.D.N.Y. 1997) ("when a party agrees to arbitrate a dispute in New York, such agreement


is deemed consent to the jurisdiction of the courts for purposes relating to enforcing the arbitration agreement"); 2 N.Y. Prac., Com. Litig. in New York State Courts § 11:43 (2d ed.) ("Personal jurisdiction will exist over a party that has agreed to arbitrate in New York").

6. The Court has subject matter jurisdiction over this dispute pursuant to 9 U.S.C. §§ 2, 202-03, 205.

## Venue

7. Under 9 U.S.C. § 204, a State Court Action over which the district courts have jurisdiction pursuant to 9 U.S.C. § 203 may be brought in the federal court "for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." As the parties' arbitration agreement designates New York City, New York as the place of arbitration, Petition ¶ 7, this Court is thus the appropriate venue. *See* 28 U.S.C. § 112(b) (stating that the County of New York is within the Southern District of New York).

## Factual Background

### A.  The Project and the Contracts

8. This matter arises out of a series of contracts executed on or around October 9, 2000 between UEGA and Bechtel aimed at delivering a "turnkey" 469 MW gas turbine power plant located at Araucária, Paraná in Brazil. Umbrella Agreement, Nawaz Aff., Ex. 6, Recital 1. The Project was "turnkey" in that Bechtel and its subcontractors were to deliver, on or before December 1, 2002, a brand new power plant that was tested, commissioned, connected to the Brazilian power grid and ready to commence commercial operations on the day that UEGA assumed control under the Contracts. *See* Site Construction Contract, Nawaz Aff., Ex. 3 ("Site Contract"), Art. 1.1 (defining the Site Contract's "Works").

9. The Contracts reflect the parties' intention to resolve Project-related disputes out of court. They require informal negotiations between senior managers and contemplate mediation before either party proceeds to arbitration. Contracts, Art. 36.1-2. The mediation requirement is waived if one party will not participate in the mediation. *Id.* at Art. 36.2.

10. If the parties fail to reach a resolution under Article 36:

> Any dispute, controversy, or claim arising out of or relating to the Contract[s], or the breach, termination or validity thereof . . . shall be finally settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce [ ] then in effect (the "Rules"), except as these rules may be modified herein.

Contracts, Art. 37.2. There is nothing in Article 37 that removes particular disputes (such as statutes of limitations disputes) from the scope of the parties' agreement to arbitrate. *See generally*, *id.* at Art. 37. An arbitration award issued by the ICC arbitral tribunal "shall be final and binding upon the parties, and shall be the sole and exclusive remedy between the parties regarding any claims, counterclaims, issues or accountings presented . . . ." *Id.* at Art. 37.2.4.

11. The ICC arbitral tribunal is to apply New York law when interpreting the Contracts and the meaning of the parties' agreement to arbitrate. *Id.* at Art. 37.2.2 and Art. 39.1.1. The Contracts also provide that the tribunal is to apply the ICC's rules except as those rules may be modified by the Contracts themselves. *Id.* at Art. 37.2, Art. 37.2.2 and Art. 39.1.2.

### B. The STG Repair Procedures in 2002

12. The notice to proceed for the Project was issued in October 2000. Site Contract, Section 3, p. 1 (Pricing Document). In mid-June 2002, however, ABB Alstom Power Generation AG ("Alstom"), the manufacturer of the Project's STG, notified Bechtel of a potential manufacturing defect in its product. *See* Nawaz Aff., Ex. 9 (correspondence describing potential lug welding defect). Specifically, Alstom believed that the Project's STG "lugs" suffered from

the same welding defect that had recently caused a failure in an identical STG installed at a United States power plant. *See id.* As the Project's STG was already installed, Alstom recommended immediate on-site repair. *See* Nawaz Aff., Exs. 7 and 8 (Project meeting minutes, STG repair summary and schedule)

13. Alstom's repair procedures required that the welded joints between the STG's new lugs and the existing phase ring be checked with a "dye-penetrant test." *See* Nawaz Aff., Ex. 9 (Alstom test procedures). Such testing evaluates the integrity of a weld joint or seam by revealing any cracks, porosities or improper fusion. Fogaca Decl. ¶ 21. Neither Bechtel nor Alstom has ever provided contemporaneous documentation from 2002 specifically confirming that Alstom performed dye-penetrant testing on each of the new lugs and providing the test results. *Id.* Instead, Bechtel and Alstom only provided results from high potential testing, which evaluates the adequacy of electrical insulation under high voltage but does not address welding integrity. *Id.*

14. Final Completion of the Project was achieved on November 15, 2002. Nawaz Aff. ¶ 15. For reasons unrelated to its design, procurement, construction or testing, commercial operation of the Project did not commence until December 2006. Fogaca Decl. ¶ 18.

**C.    The STG Failure in 2008**

15. After less than 8,000 hours of operation, on January 13, 2008, the Project's STG suffered a catastrophic failure. Fogaca Decl. ¶ 19. The Project was offline for several weeks while Alstom repaired the STG, resulting in tens of millions of dollars in damages to UEGA. *Id.*; *see* Nawaz Aff. Ex. 1 (Request for Arbitration).

16. Expert analysis has revealed that the STG failure was caused by deficiencies in the structural integrity of the lug welds, including cracking, porosities and improper fusion.

Fogaca Decl. ¶ 20. These deficiencies would have been discovered by Alstom had it properly performed the required dye-penetrant testing on the lug welds in July/August 2002. *Id.* at ¶ 21.

      **D.**      **The Arbitration and Present Action**

      17.      Under the Contracts, Bechtel is liable for Alstom's "acts, defaults and neglects" as if they were Bechtel's own. Contracts, Art. 3.3(b). Accordingly, on September 29, 2008, UEGA filed an ICC Request for Arbitration against Bechtel seeking to recoup the damages caused by the STG failure. Declaration of Jeffrey Follett ("Follett Decl.") ¶ 3. The same day, UEGA filed a Request for Stay of the Arbitration to allow the parties to engage in the informal dispute resolution procedures set forth in Article 36 of the Contracts. *Id.*

      18.      The parties attempted to resolve their dispute informally but reached an impasse in 2009. *Id.* at ¶¶ 4-6. After UEGA indicated that it would resume the Arbitration, Bechtel filed the present action in the Supreme Court of New York seeking a permanent stay that proceeding. *Id.* at ¶ 7. Bechtel has stated that, in addition to pursuing this legal action, it will request the ICC arbitral panel to stay the Arbitration pending the outcome of the present action, and that it only wishes to arbitrate those claims remaining after conclusion of the present action. *Id.* at ¶ 8. The ICC's case administrator for the Arbitration, however, has indicated that the ICC is not likely to consider the existence of parallel proceedings to be a reason to stay the Arbitration. *Id.* at ¶ 9. UEGA is now in the process of taking the Arbitration out of abeyance. *Id.* at ¶ 10.

## **RELIEF REQUESTED**

WHEREFORE, UEGA respectfully requests the following relief:

1. Entry of an order denying Bechtel's petition for a permanent stay of the ICC arbitration.

2. Entry of an order compelling Bechtel to participate in the ICC arbitration without further delay.

3. Any other legal, equitable or other relief the Court deems just and proper, including without limitation costs and reasonable attorneys' fees.


                UEG ARAUCARIA LTDA.
                By its attorneys


                /s/ Ronald E. Goodman
                Ronald E. Goodman (RG-0515)
                FOLEY HOAG LLP
                1875 K Street, NW, Suite 800
                Washington, DC  20006-1238
                Tel: (202) 223-1200

                and

                Blair C. Fensterstock (BF-2020)
                FENSTERSTOCK & PARTNERS LLP
                30 Wall Street
                New York, NY  10005
                Tel: (212) 785-4100
                E-mail: BFensterstock@fensterstock.com

Dated: July 20, 2009