UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the Matter of the Application of BECHTEL DO BRASIL CONSTRUÇÕES LTDA., BECHTEL CANADA CO., and BECHTEL INTERNATIONAL INC.,

　　　　Petitioners,

v.

UEG ARAUCÁRIA LTDA.,

　　　　Respondent.

---

Civil Action No. 1:09-cv-06417-BSJ

**STIPULATION AND ORDER REQUESTING THE CLERK OF THE
COURT TO DOCKET BRIEF**

IT IS HEREBY AGREED AND STIPULATED, by and between Petitioners Bechtel do Brasil Construções Ltda., Bechtel Canada Co., and Bechtel International Inc. ("Bechtel"), and Respondent UEG Araucária ("UEGA") pursuant to Fed. R. App. Proc. 10(e), as follows:

WHEREAS UEGA filed a Notice of Appeal on January 25, 2009, in the above-captioned case from the Judgment of this Court entered on December 30, 2009, and the underlying Orders dated November 16, 2009, December 4, 2009 and December 22, 2009;

WHEREAS only those documents that have been docketed by the Clerk of the Court can be included in the Record on Appeal;

WHEREAS, the docket in the above-captioned action indicates that a certain brief submitted by Bechtel is not listed as part of the official record;

WHEREAS, the parties agree that the record is incomplete and should be supplemented to include that brief;

NOW, THEREFORE, it is hereby stipulated and agreed by the undersigned counsel that the document listed below shall be docketed by the Clerk of the Court as part of the record, and shall be included in the Record on Appeal that will be transmitted to the Second Circuit Court of Appeals:

1. Brief entitled "Petitioners' Response to Respondent's Improper Sur-Reply Submission in Opposition to Petition For Permanent Stay of Arbitration" dated September 2, 2009. (A true and correct copy of this brief is attached hereto as Exhibit A.)

IT IS SO STIPULATED:

DATED:   February ___, 2010            O'MELVENY & MYERS LLP

                                       By: _____
                                       Steven L. Smith (*admitted pro hac vice*)
                                       Two Embarcadero Center, 28th Floor
                                       San Francisco, CA 94111
                                       ssmith@omm.com
                                         Attorneys for Petitioners

DATED:   February ___, 2010            FOLEY HOAG LLP

                                       By: _____
                                       Jeffrey S. Follett (*admitted pro hac vice*)
                                       Seaport World Trade Center West
                                       155 Seaport Boulevard
                                       Boston, Massachusetts 02210-2600
                                       jsf@foleyhoag.com
                                         Attorneys for Respondent

IT IS SO ORDERED, this ___ day of February, 2010

_____
The Honorable Barbara S. Jones
United States District Court Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of BECHTEL DO BRASIL CONSTRUÇÕES LTDA., BECHTEL CANADA CO., and BECHTEL INTERNATIONAL INC., <br><br> Petitioners, <br><br> v. <br><br> UEG ARAUCÁRIA LTDA., <br><br> Respondent. | Civil Action No. 1:09-cv-06417-BSJ |

**PETITIONERS' RESPONSE TO RESPONDENT'S IMPROPER
SUR-REPLY SUBMISSIONS IN OPPOSITION TO PETITION
FOR PERMANENT STAY OF ARBITRATION**

## I. UEGA'S CLAIMS ARE BARRED UNDER NEW YORK LAW.

Under New York law, a contract claim against a builder accrues upon the "substantial completion of the works," which has been further defined to mean the "completion of *actual physical work*," regardless of whether incidental items remain outstanding. (*See* Bechtel's Reply at 15-16, Docket No. 16.) UEGA has not and cannot controvert this settled law. Instead, UEGA suggests that this standard favors UEGA because, under Article 1.1 of the parties' Contracts, "Works" is defined to include "commissioning" and "testing."

UEGA's argument corrupts the applicable standard. Under the Contracts, the term "Works" is a shorthand reference for everything Bechtel is required to do – including actual physical construction of the plant, but also other matters not directly associated with physical construction. (*See* Site Construction Contract, Art. 6.1(a)-(b), Nawaz Aff., Exh. 4 at 28-29, Docket No. 8.) UEGA's standard thus disregards the fundamental distinction that New York law draws between *complete* performance of all contractual undertakings, on the one hand, and *substantial* completion of the works (or completion of actual physical work), on the other. *See, e.g., State v. Lundin,* 459 N.E.2d 486, 487-88 (N.Y. 1983) (Continuation of the owner's contractual relationship with the contractor beyond the key statute of limitations date does not of itself serve to extend construction completion); *Superb Gen. Contracting Co. v. City of New York*, 833 N.Y.S.2d 64 (N.Y. App. Div. 2007) (Claim accrued upon substantial completion of the work, despite builder's contractual obligation to participate in owner's final inspection). In short, UEGA's claims accrued upon Bechtel's completion of actual physical work, at Mechanical Completion, not upon its completion of the "Works," as that term is defined in the Contracts.

This conclusion is further compelled by UEGA's concession that "[t]he purpose of the Tests on Completion was to *demonstrate* that the Project could satisfy the Minimum Performance Requirements . . ." under the Contracts. (UEGA's Reply at 7, Docket No. 25

(emphasis added).) Accordingly, those tests were not part of the work required to physically complete the plant but rather tests to *confirm* that the plant had already been completed. The Araucária plant passed those tests with ease because the actual physical work was already finished as of the date of Mechanical Completion.[1] Nor does the reference to "commissioning" help UEGA, as commissioning refers to the start-up of the sub-systems of the plant prior to Mechanical Completion in order to ready the plant for the Tests on Completion. (*See* Declaration of Arshad Nawaz, ¶¶ 16-18, Docket No. 17.)

## II.  THE PARTIES' AGREEMENTS DO NOT EXCLUDE NEW YORK'S BORROWING STATUTE.

To avoid New York's borrowing statute, UEGA asserts: (1) that NY CPLR § 202 is a conflicts-of-laws rule; and (2) that the choice-of-law provisions in the parties' Contracts exclude such rules. Bechtel has already shown that neither premise is sound. (*See* Bechtel's Reply at 23-25, Docket No. 16.) UEGA's latest suggestion – that Bechtel has misrepresented the parties' Contracts by relying on section headings to interpret them – is equally unfounded.

The Contracts' choice-of-law clause is found at Article 39.1 and reads as follows:

39.1.1  Governing Law.

> The law which is to apply to the Contract and under which the Contract is to be construed is the law of the state of New York, without regard to that jurisdiction's conflicts of laws rules. . . .

---

[1] UEGA also asserts that "it is patently absurd for Bechtel to suggest that UEGA should be deemed to have occupied the Project prior to Acceptance. . . ." (UEGA's Reply at 8, Docket No. 25.) UEGA misses the point. Bechtel has already shown that "beneficial use and occupancy" is not the relevant test (Bechtel's Reply at 15-17, Docket No. 16) and, in its sur-reply, UEGA offers nothing to rehabilitate that erroneous standard. At the same time, Bechtel has shown that, as a factual matter, UEGA enjoyed beneficial use of the plant well before Acceptance: UEGA does not and cannot dispute that, before Acceptance, the plant generated and distributed electricity to the grid; that UEGA owned the electricity; and that UEGA received the economic benefits from its distribution. UEGA's "beneficial use and occupancy" test therefore fails on the facts as well as the law.

2

39.1.2 <u>Procedural Law</u>.

> The law governing the procedure and administration of any arbitration instituted pursuant to Clause 37 is the law of the State of New York.

The effect of these provisions is clear on their face even if the headings are disregarded. Article 39.1.1 provides that the law applied to the contract and its interpretation is the law of New York excluding New York's conflicts-of-laws rules. In contrast, Article 39.1.2 separately provides that the law governing the ***procedure*** and ***administration*** of any arbitration is the law of the state of New York; there is no carve-out for procedural statutes that might also be characterized as conflicts rules, and there is no indication that the carve-out formulated in Article 39.1.1 was intended to apply to the procedural matters in Article 39.1.2.

Bechtel has shown – and UEGA cannot dispute – that, under New York law, statutes of limitations are treated as procedural rules and, consequently, that New York courts apply New York's statutes of limitations regardless of what substantive law governs the claims. *See, e.g., Martin v. Julius Dierck Equip. Co.*, 374 N.E.2d 97, 99 (N.Y. 1978); *see also*, Bechtel's Reply at 25, Docket No. 16. Because New York's Borrowing Statute, NY CPLR § 202, is part-and-parcel of the New York procedural framework defining limitations periods, Article 31.1.2 requires it to be applied to any claim UEGA might attempt to assert in arbitration.[2]

---

[2] Article 26.1 of the Umbrella Agreement (cited at UEGA's Reply Brief at 12 n.8) does not change this result. Like Article 39.1.1 of the Contracts, Article 26.1 concerns only the substantive law applicable to the Contracts. The procedural rules governing arbitrations under the Umbrella Agreements are set forth in a separate section (26.2), which requires application of the Contracts' dispute-resolution provisions – including Article 37.2.2, which provides that "[a]ny arbitration proceedings or award rendered hereunder and the validity, effect and interpretation of this agreement to arbitrate shall be governed by the laws of the state of New York." Under this unequivocal provision, New York arbitration procedures – including NY CPLR §§ 7502 and 7503 – are controlling. Sections 7502 and 7503 in turn require the court to permanently stay arbitration of any claims that would have been time-barred if brought in the courts of New York. New York courts would undoubtedly apply Section 202 as part of state's procedural rules governing limitations of actions.

### III. UEGA'S CONTRACT CLAIMS ARE UNTIMELY UNDER BRAZILIAN LAW.

In an attempt to avoid the time limitations of Brazilian law, UEGA asserts: (1) that Article 618 of the Brazilian Civil Code does not apply here – purportedly because the "catastrophic" failure of the steam turbine generator did not undermine the stability and safety of the entire Araucária plant; and (2) that Article 618 applies only to strict-liability claims and does not bar UEGA's claim for breach of contract. Neither assertion is supported by Brazilian law.

Bechtel's Brazilian law expert, Dr. Tiago Cortez, has shown, with numerous authorities, that Article 618 is *not* narrowly construed and must be read to embrace defects that cause even *part* of a construction to be ***unfit for its intended use***. (*See* Cortez Decl. ¶¶ 8-12, Docket No. 15.) UEGA's Brazilian counsel, Mr. Almeida, does not – as UEGA suggests –"vehemently disagree"; he merely asserts that these opinions are not "clearly supported by the mixed precedents in this area of the law." (Almeida Supp. Decl. ¶ 3, Docket No. 26.)

Tellingly, the one case that Mr. Almeida cites to show that the precedents are "mixed" – *RExt 110.023-1* – is entirely inapposite. In that case, the court found no builder liability based on Article 618 or otherwise. As reflected in language that Mr. Almeida's block quote omits with ellipses, the court made clear that "the contractor may not be held liable for defects arising out of the specification of the plans prepared by a third party upon request of the owner of the building [*i.e.*, by the owner's architect]." Under those circumstances, the court held that Article 618 did not apply – and the builder was *not* liable – because the defects were in the architect's plans, not the builder's construction work. In short, RExt 110.023-1 provides no support for a narrow interpretation of Article 618's "stability and safety" language.

UEGA's second suggestion – that Article 618 only applies to strict liability claims and does not affect UEGA's ability to sue for breach of contract – is equally unsupported. As explained in Dr. Cortez's earlier declaration, the owner of a significant construction can indeed

4

pursue claims against a contractor beyond the five-year guarantee period provided in Article 618 *based on a showing of fault* (in Portuguese, "*culpa*"). (Cortez Decl. ¶¶ 13-17, Docket No. 15.) Contrary to his current position, UEGA's Brazilian counsel initially held the same position. (Almeida Decl. ¶ 6, Docket No. 5 (noting that, after Article 618's five-year guarantee period, a property owner could hold a builder liable only if the "builder's fault ["*culpa*"] . . . is duly proved.")) The only disagreement between Dr. Cortez and Mr. Almeida was not whether "fault" was required, but whether a mere breach of contract could constitute "fault." Dr. Cortez has shown that it cannot. For purposes of establishing contractor liability after Article 618's five-year period, the owner cannot rely on a breach of contract (*inadimplemento*); it must prove extra-contractual wrongdoing such as negligence. (Cortez Decl. ¶¶ 13-17, Docket No. 15.) This conclusion is inherent in the basic definition of "*culpa*" in Brazilian legal doctrine, and also follows from the fact that, after Article 618's five-year term, the builder's contractual obligations are extinguished. (*Id.*, ¶¶ 15-16.)[3] If the owner no longer has any contractual rights, it obviously cannot sue for mere breach of contract. (*Id.*)

In an attempt to obfuscate this settled law, UEGA cites a terse comment from the *Enunciado da III Jornada de Direito Civil* (an unofficial commentary on portions of the Brazilian Civil Code). Though non-precedential, that source is fully consistent with Dr. Cortez's analysis. It states merely that a property owner can recover against a builder for defective work performed under a *contrato de empreitada* after the Article 618 guarantee period. It does not

---

[3] T.J.R.S., AC. No. 35.216, Relator: Des. Ruy Ruben Ruschel, 25.06.1980 – the case cited at paragraph 6 of Mr. Almeida's supplemental declaration (RTJRS 84/411) – emphasizes this point. There the court held: "If the owner of the building accepts it, the builder is exempt from any liability for defects that appears after the delivery, provided that the builder had not expressly accepted any further liability for these defects. This is the conclusion that one reaches from the analysis of art. 1242 from the Brazilian Civil Code."

5

discuss (much less controvert) the fault requirements for such an action to proceed – *i.e.*, the requirement that the claim be based on negligence or other tortious misconduct.

Whether or not UEGA's tort claims would be timely under Brazilian law, its contract claim plainly is not. Notably, UEGA has not even attempted to argue that its tort claims are timely under New York law. Like its contract claim, UEGA's tort claims are clearly time-barred.

Dated:  September 2, 2009

Respectfully submitted:

O'Melveny & Myers LLP

*/s/ Andrew L. Smith*

Andrew J. Frackman
Times Square Tower
7 Times Square
New York, NY 10036
afrackman@omm.com

Steven L. Smith (*admitted pro hac vice*)
Marcus S. Quintanilla (*admitted pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
ssmith@omm.com
mquintanilla@omm.com